LAEVIN *v.* ST. VINCENT DE PAUL SOCIETY
OF GRAND RAPIDS.

1. CONTRACTS—CONSTRUCTION OF INSTRUMENT AS A WHOLE.
   In construing a contract the instrument is to be construed as
   a whole and all its parts are to be harmonized so far as rea-
   sonably possible so that every word in it is to be given
   effect, if possible, and no part eliminated or stricken by
   some other part unless such a result is fairly inescapable.

2. SAME—CONSTRUCTION SO AS TO USE EVERY WORD.
   Every word in an agreement must be taken to have been used
   for a purpose and no word should be rejected as mere sur-
   plusage if the court can discover any reasonable purpose
   thereof which can be gathered from the whole instrument.

3. LANDLORD AND TENANT—FIRST PRIVILEGE OF RE-LEASING—CON-
   DITIONAL OPTION.
   Under a lease giving the lessees the "first privilege of re-
   leasing" the premises at the expiration of the term of the
   lease, the lessees hold the "first" privilege of re-leasing, an
   option conditioned upon the lessor's willingness to re-lease.

4. SAME—FIRST PRIVILEGE OF RE-LEASING PREMISES—OPTION.
   Lessees under lease granting them the "first privilege of re-
   leasing" the premises at the expiration of the term do not
   have an unconditional option to re-lease, hence are not en-
   titled to a decree compelling lessor to re-lease the premises.

Appeal from Superior Court for the City of Grand
Rapids; Taylor (Thaddeus B.), J. Submitted Jan-
uary 6, 1949. (Docket No. 22, Calendar No. 44,225.)
Decided February 28, 1949.

REFERENCES FOR POINTS IN HEADNOTES
[1, 2] 12 Am. Jur., Contracts, § 241.
[3, 4] 32 Am. Jur., Landlord and Tenant, § 971.

Bill by Samuel Laevin and Charles Belkin, doing business as L & B Clothiers and under assumed name of Samuel Ragir Clothing Company, against St. Vincent de Paul Society of Grand Rapids, a Michigan corporation, to specifically enforce the provision of an option. Decree for defendant. Plaintiffs appeal. Affirmed.

*Benjamin T. Smith,* for plaintiffs.

*Carmody, Geib, Walsh & Block,* for defendant.

BOYLES, J. This is a bill in chancery to compel specific performance of a certain provision in a lease, claimed by plaintiffs to give them an option to re-lease certain premises for 5 years after the expiration of the existing term. The trial court concluded that the provision did not give plaintiffs an unqualified right to re-lease and from the decree dismissing their bill of complaint, plaintiffs appeal. The facts are not in dispute.

For a number of years prior to 1943 plaintiffs had been employed by one Sam Ragir who conducted a retail clothing business in leased premises on South Division avenue in Grand Rapids. In September, 1943, plaintiffs purchased his entire business. At that time Ragir held the premises by virtue of a lease from the Woman's Home Association, the owner of the premises. Plaintiffs negotiated with the owner and obtained a new lease, at an agreed monthly rental, for the term of 4 years and 11 months from and after October 1, 1943, expiring September 1, 1948. Plaintiffs occupied the premises and complied with the terms and conditions of their lease. In the meantime, the Woman's Home Association sold the property to the defendant here, subject of course to the terms of the lease. In February, 1948, plaintiffs sought a renewal of their lease, or a re-lease of the

premises, from the defendant owner, claiming an option for another 5-year term under certain provisions in their lease to which reference will later be made herein. The defendant denied that plaintiffs had any binding option or right to re-lease and gave notice that the defendant expected to have possession when the lease expired. Thereupon plaintiffs filed the instant suit for specific performance.

The provision in the lease upon which plaintiffs rely for the right to re-lease the premises is as follows:

"It is hereby understood and agreed by both parties to this lease that the second parties (plaintiffs herein) have first privilege of re-leasing said premises at the expiration of the period of this lease at a rental price which is mutually satisfactory to the said parties for another 5-year period."

The crucial question, as stated by appellants in their brief, is whether the language in the above provision giving plaintiffs the "first privilege of re-leasing said premises" grants plaintiffs a binding option for a new term which is not dependent on the willingness of the lessor to re-lease.

In construing the meaning of the provision in question, we are aided by earlier decisions in this State which, however, do not control, as shown later herein. We are further aided by a rule of construction consistently followed by this Court, aptly stated in *Duval* v. *Aetna Casualty & Surety Co.*, 304 Mich. 397, 401, quoting from *American Fidelity Co.* v. *Deerfield Valley Grain Co.*, 43 Fed. Supp. 841:

"I prefer the rule laid down in *Continental Casualty Company* v. *Pierce*, 170 Miss. 67 (154 South. 279, 281), wherein the court said, 'It is a cardinal principle of construction that a contract is to be construed as a whole; that all its parts are to be harmonized so far as reasonably possible; that every

word in it is to be given effect, if possible; and that no part is to be taken as eliminated or stricken by some other part unless such a result is fairly inescapable.' "

In *Draper* v. *Nelson*, 254 Mich. 380, 383, the Court said:

" 'Every word in the agreement must be taken to have been used for a purpose, and no word should be rejected as mere surplusage if the court can discover any reasonable purpose thereof which can be gathered from the whole instrument.' 6 R. C. L. p. 838, quoted in *McIntosh* v. *Groomes*, 227 Mich. 215, 218."

Hence, some significance must be attached to the language giving plaintiffs the "first" privilege of releasing the premises. If the word "first" be eliminated, the lease would give plaintiffs the "privilege of re-leasing said premises," and an option to do so. However, the word "first" does have a meaning which can be given a definite effect. "First," as used in this lease implies a priority in the plaintiffs, it signifies that they, before all others, shall have the privilege of re-leasing. Plaintiffs, however, would read the disputed phrase to give them an absolute option to re-lease, much the same as if the word "first" were omitted. Defendant interprets the phrase to mean that plaintiffs will have the first privilege of re-leasing if defendant decides to re-lease and not to sell or occupy the premises itself.

Plaintiffs rely mainly on *Hake* v. *Groff*, 232 Mich. 233. In that case the lease contained the following language:

"The first party also agrees to sell to the second party the said property for the sum of $9,000, and the second party does and has agreed to pay $9,000 for the same during the life of this lease. In other

words, the first party gives the first refusal to the second party to purchase same."

As stated by the Court in the opinion, the contentions of the parties in the *Hake Case* were the same as in the case at bar. The Court said:

"The question is, What did they mean by the term 'first refusal?' As the plaintiff construes it, 'first refusal' means that he is to have the option to buy during the term of his lease. As the defendants understand it, the plaintiff is given the first opportunity to buy providing the defendants desire to sell."

It must be conceded that some language in the *Hake Case* might be construed to apply to the instant case, unless read in connection with the situation in that case. It reads:

" 'First privilege of buying' is also equivalent to a first option to buy. *Schroeder* v. *Gemeinder,* 10 Nev. 355.

"In the instant case the language 'first refusal to purchase' gave the lessee the first option. This option he might exercise at any time during the period of his lease unless the lessor has an opportunity to sell to another at which time, upon notice of that fact, the lessee must elect whether he will purchase the property. But if no such notice is given he has the entire term in which to exercise his option, and if he does so the lessor is bound to sell."

The above statement must now be considered as *dictum,* in view of our more recent decision in *Brenner* v. *Duncan,* 318 Mich. 1. Nor does the conclusion reached by the Court in the *Hake Case* aid the plaintiffs in the instant case. In denying the plaintiff specific performance of the claimed option to purchase, the Court in the *Hake Case* said:

"Considering every provision of the lease in connection with the circumstances and conditions under which it was executed, we are of the opinion that the

plaintiff's 'first refusal' to purchase depended upon the defendant's decision to sell in the event that he decided to remain in California. If he desired to sell the plaintiff was to have the first opportunity to buy for a consideration of $9,000."

Nor can we say that *Nu-Way Service Stations, Inc.,* v. *Vandenberg Bros. Oil Co.,* 283 Mich. 551, is controlling here, although "first chance" to purchase was construed in that case. The express language of the so-called option in that case distinguishes it. The controlling opinion states:

: "The option reads: 'In case the said party of the first part desires to sell said property *at the end of the term of this lease,* * * * for a period of 90 days' defendant shall have 'the first chance' to purchase on the most favorable terms. Obviously defendant had only a limited or conditional option, so-called. Its rights as an optionee were limited first by the period of 90 days beginning February 1, 1937, and also by the contingency of whether the optionor (or those in privity with him) desired to sell 'at the end of the term of this lease.' The undisputed testimony is that neither the optionor nor those standing in privity with him desired to sell the property at the expiration of the lease. The bank trustees did not have the power to sell at that time except subject to the contract rights of plaintiff. Plaintiff did not desire to sell. Therefore the condition under which the option might be enforced did not exist."

Again, in *Brenner* v. *Duncan, supra,* the express language used in the "first preference" option to purchase, and the circumstances of the case, distinguish it from the situation we now have before us. In that case the lease provided:

"That in the event the land is to be sold, the tenant will be given first preference and allowed to purchase said land if the parties can agree on the price."

Notwithstanding this provision, the lessors' successor to the title sold and conveyed the premises without affording the lessees first preference or allowing them opportunity to purchase. This Court granted the plaintiffs-lessees specific performance of the option and an opportunity to purchase.

It thus becomes apparent that each case depends on the wording of the provision relied upon, and the circumstances of the case. Plaintiffs rely heavily upon *Stetler* v. *North Branch Transit Co.,* 258 Pa. 299 (101 Atl. 980), and quotations from cases in other jurisdictions.

It would be of little value to here attempt an analysis of the decisions from other States. Many of them are distinguishable, and suffice it to say that the majority apparently adopt a construction which, in the absence of other details, holds "first" privilege of re-leasing to mean an option conditioned upon the lessor's willingness to re-lease. See *Edwards* v. *Bernstein,* 238 Ky. 38 (36 S. W. [2d] 662); *Pearce* v. *Turner,* 150 Ill. 116 (36 N. E. 962); *Walsh* v. *Fort Schuyler Brewing Co.,* 83 Misc. 488 (146 N. Y. Supp. 160); *Cloverdale Co.* v. *Littlefield,* 240 Mass. 129 (133 N. E. 565); *Hill* v. *Prior,* 79 N. H. 188 (106 Atl. 641); *Buddenberg* v. *Welch,* 97 Ind. App. 87 (185 N. E. 865).

The preferable construction is that the words here in question constitute a conditional option only. As was said by the New York court in *Holloway* v. *Schmidt,* 33 Misc. 747 (67 N. Y. Supp. 169):

"The words, 'first privilege of a renewal,' as used in the lease, meant the prior right to a lease of five years upon terms the same as those in the lease of 1895, provided the landlord should give a lease."

As was said in *Lehr* v. *Professional Underwriters,* 296 Mich. 693, 697:

"To hold otherwise would be to write a new contract for the parties. This we have no right to do."

The provision in the lease here under consideration does not give the lessees an unconditional option to re-lease, and plaintiffs are not entitled to a decree compelling the defendant to re-lease the premises. In view of the above conclusion, it is not necessary to discuss other questions raised in the briefs. The decree dismissing the bill of complaint is affirmed, with costs to appellee.

Sharpe, C. J., and Bushnell, Reid, North, Butzel, and Carr, JJ., concurred.

Dethmers, J., concurred in the result.