Abraham N. Geller, J.
This action for a declaratory judgment involves a controversy among three liability insurance companies — Provident as plaintiff and Allstate and Utica as defendants — relative to their obligations of defense and indemnification under their respective policies with regard to a pending action for personal injuries. Since the amount therein sued *531 for is within the limits of each of the three policies, the declaratory judgment requested will as a practical matter dispose of the controversy, even though the injured party has not been made a party to this action and is therefore not bound by this determination. None of the briefs submitted by counsel refers to any reported case, and the issue has been treated as one governed entirely by construction of the pertinent policy provisions.
Ruth Bogin was an “insured” under Provident’s liability policy issued on her husband’s automobile. She was the operator of the automobile owned by Dennis Isabelle which was involved in the accident, and both have been sued by the injured party. Dennis Isabelle, who was the shop foreman of Ross Oort, Inc., an automobile dealer with service and repair facilities, had permitted her to use his car during the time her automobile was being serviced at the shop.
The Provident policy insures Mrs. Bogin with respect to this accident, since coverage is provided for a “ temporary substitute automobile ” during the time the described automobile is withdrawn from use because of breakdown, repair, servicing, loss or destruction. But Provident’s policy provides that, where coverage arises from the use of a temporary substitute automobile, it shall constitute excess insurance only over any other valid and collectible insurance.
Accordingly, Provident is charged with the duty of defense and indemnification as to Mrs. Bogin, unless either Allstate, insurer of Mr. Isabelle’s automobile, or Utica, insurer of Ross Oort, Inc.’s, operations, is held to have such obligation under the terms of their respective policies. In that case Provident’s responsibility would be limited solely to provide excess insurance.
The testimony indicated that Ross Oort, Inc., loaned automobiles, when required, to customers, who left their cars for servicing or repairs; that Dennis Isabelle had to obtain authorization from his superiors to lend a company car for such purpose; that no company car was available at that time for Mrs. Bogin’s use; that he had known her for several years as a customer; and that, when she told him of her need for a car, he loaned her his own personal automobile for the day, not troubling even to discuss the matter with his superiors. There was no evidence that he had ever loaned his personal automobile to a customer of the firm on any other occasion.
Ross Oort, Inc., was insured by Utica under a ‘ ‘ garage ’ ’ liability policy. It covers such functions as automobile dealer, repair shop, service station, and storage garage, and all operations necessary or incidental thereto, as well as the use of any *532 automobile in connection with said operations. It also specifically covers the use in connection with said operations of any automobile not owned or hired by the named insured. The definition of “ insured ” includes the named insured and any person ‘ ‘ while using an automobile covered by this policy * * * provided the actual use of the automobile is by the named insured or with his permission. [But] This policy does not apply: (a) to * * #; (b) to any * * * employee * * * or additional insured with respect to any automobile owned by him ’ ’.
Thus, if Mrs. Bogin had been operating a company car or even a nonowned car but with permission of Boss Oort, Inc., she would have been covered by this policy, provided it was not any automobile owned by an employee. The evidence established that “ permission ” for the use of the car as necessary or incidental to the operations of Boss Oort, Inc., was not obtained, as required, by Mr. Isabelle from his superiors. But, in addition, the above-quoted exclusionary clause expressly eliminates from coverage any accident when the automobile so used is owned by an employee. Evidently such garage liability insurance is not intended to be extended to cover personal automobiles of employees loaned for use in the business. It is clear, in any event, that Mr. Isabelle’s loan of his own automobile to Mrs. Bogin was purely a personal transaction on his part and, as such, was not an act within the course and scope of his employment binding upon Boss Cort, Inc. Utica is therefore entitled to judgment dismissing the complaint as against it.
Allstate’s policy to Mr. Isabelle clearly covers Mrs. Bogin for this accident as an additional insured using his automobile with his permission, unless the following exclusionary provision therein is applicable to these circumstances — that the automobile liability insurance does not apply to: 1. (any automobile while used as a public or livery conveyance, etc.) “ 2. an owned automobile while used in an automobile business, but this exclusion does not apply to the named insured, a resident of the same household as the named insured, a partnership in which such named insured or resident is a partner, or any partner, agent or employee of such resident or partnership ” [emphasis added]; 3. (a nonowned automobile while used [a] in an automobile business by the insured, or [b] in any other business or occupation of the insured except a private passenger automobile, etc.).
The exclusion of the owned automobile, the subject of the insurance, “while used in an automobile business,” defined in the policy as “ the business of selling, repairing, servicing, storing or parking of automobiles,” would apply to its use by any person other than the named insured, a member of his household, *533 or Ms partner or employee, in an automobile business. Accordingly, if it be held that Mr. Isabelle’s automobile was being “ used in an automobile business ” within the meaning of this exclusionary provision, the policy Avould not apply and neither Mr. Isabelle nor Mrs. Bogin Avould be covered for this accident.
It is a truism that any ambiguity in a contract is to be construed against the draftsman and that a contract, particularly a policy prepared by an insurance company, is to be given an ordinary and natural meaning. The phrase, “ while used in an automobile business,” must be given the meaning naturally understood by ordinary persons. Since such use by others of the subject automobile would deprive even the assured of the benefit of the policy, and would in this case bar coverage to Mr. Isabelle if the circumstances of his loan of his car to Mrs. Bogin be construed as use “ in an automobile business,” the meaning of the quoted exclusionary phrase must reasonably be confined to an automobile business in which the assured has some beneficial interest to permit the use of his personal automobile by others in furtherance of the business. The exclusion is evidently intended to prevent coverage to such business use as would unduly extend the insurer’s risks. This interpretation, limiting the exclusionary clause to the established practice of an automobile business, is borne out by the first and third exclusionary provisions immediately preceding and following this proAÚsion.
Juszkewicz v. Neto Jersey Fid. & Plate Glass Ins. Co. (210 App. Div. 675, 677) clearly states the applicable principle: “ In our opinion, it was the business use of the vehicle for transportation or delivery of goods or merchandise which was intended to be excluded. The definite test of a business use would usually be whether or not a profit Avas being made, directly or indirectly, by the oAvner on the particular occasion. * * * The ordinary man, in reading statement 6 of the schedule, would no doubt understand that such a business use for transportation was excluded. It is doubtful Avhether the same man would understand that if he carried any package or parcel for his neighbor, he was depriving himself of the protection of his policy.”
A similar exclusion clause Avas construed in O’Donnell v. New Amsterdam Cas. Co. (50 R. I. 269) as not prohibiting a single or isolated transaction.
It is accordingly held that the isolated and personal act of Mr. Isabelle permitting the use of his automobile by Mrs. Bogin while her car was being serviced by his employer does not fall within the exclusionary clause and, therefore, Allstate’s policy is adjudged to afford primary coverage to Mrs. Bogin.